UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re Jason Howard Scott,

Debtor.

Bankr. No. 17-25141

Chapter 13

Judge Jacqueline Cox

## AMENDED MEMORANDUM OPINION ON DEBTOR'S MOTION TO MODIFY PLAN and RULE TO SHOW CAUSE

### Background

The Debtor Jason Howard Scott filed for relief under chapter 13 of the Bankruptcy Code on August 22, 2017. His modified chapter 13 plan was confirmed on October 16, 2017. It requires the Debtor to make monthly payments of $100.00 for 60 months to the chapter 13 Trustee, Thomas Vaughn. He scheduled a $13,000.00 non-priority unsecured debt owed to the City of Chicago for parking tickets on his schedule E/F, part 2, of creditors who have unsecured claims. Bankruptcy Case 17-25141, Docket No. 1, p. 25. Unsecured creditors were set to receive 10% of the amounts owed them. Docket No. 28, p. 4. On October 30, 2017 an order was entered increasing the monthly plan payment to $420.00. Docket No. 44.

Parking ticket fines and penalties payable to governmental units are not dischargeable in chapter 7 cases. *See* 11 U.S.C. § 523(a)(7). However, these debts are dischargeable in chapter 13 cases pursuant to 11 U.S.C. § 1328(a). *In re Banks*, 545 B.R. 241, 246-47 (Bankr. N.D. Ill. 2016).

The court notes that the City of Chicago filed a secured proof of claim for $17,110.80 on

1

August 23, 2017. *See* Claim No. 1, Claims Register for Bankruptcy Case 17-25141.

The Debtor's chapter 13 bankruptcy case, 16-26667, where he represented himself, was filed on August 19, 2016; it was dismissed on September 21, 2016 for failure to file required documents. The Debtor filed another chapter 13 case, 17-03665, on February 8, 2017. That case was dismissed on July 19, 2017 for failure to pay filing fee. Docket No. 38. Attorney John A. Haderlein sought leave to appear on the Debtor's behalf on August 9, 2017; that request was withdrawn on August 16, 2017. Docket No. 46. The Debtor's pro se Motion to Reopen was also withdrawn on August 16, 2017. Docket No. 45.

When the Debtor filed this case, number 17-25141, no automatic stay came into existence pursuant to 11 U.S.C. § 362(a) because of the two bankruptcy cases dismissed in the prior twelve months. *See* 11 U.S.C. § 362(c)(4)(A).

On August 22, 2017 the Debtor filed a Motion to Impose the Automatic Stay. The automatic stay was imposed up to the October 16, 2017 10:30 a.m. confirmation hearing. The Motion to Impose an Automatic Stay was granted on October 16, 2017 when the Debtor's plan was confirmed. Docket Nos. 32 and 34.

Although the City of Chicago had notice of this case, evidenced by its Proof of Claim filed on August 23, 2017, it did not object to the treatment of its claim as unsecured or the amount of funds it was to receive under the plan. Creditors are required to address such issues before confirmation or be bound by the plan's terms. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010) ("A proposed bankruptcy plan becomes effective upon confirmation, . . . and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires . . ."). Instead of objecting to its treatment in the plan before it was confirmed

2

on October 16, 2017 or appealing the confirmation order, the City of Chicago simply refused to release the Debtor's vehicle unless it was paid 100% of its claim.

On December 29, 2017 the Debtor filed a Motion to Modify Plan in which he admitted that this case was filed to obtain release of his 1975 Buick Regal vehicle which had been impounded by the City of Chicago. He alleges that "[i]n order for the City of Chicago to release the vehicle, the Debtor's plan needs to pay the claim of the City of Chicago as secured." *See* Motion to Modify Plan, Docket No. 54 , p. 1, ¶ 3. The Proof of Claim notes that the City's debt was secured. The court notes, however, that the City of Chicago did not object that the confirmed plan treated its claim as unsecured. It is bound by the terms of the confirmed plan.

On January 22, 2018 the court issued a Rule to Show Cause directed to the City of Chicago to show cause why it should not be sanctioned for refusing to release the vehicle pursuant to *Thompson v. GMAC*, 566 F.3d 699 (7th Cir. 2009).

In *Thompson* the Seventh Circuit held that a secured creditor has to return collateral to the bankruptcy estate and then, if necessary, seek adequate protection of its interests from the bankruptcy court. According to the Seventh Circuit the secured creditor therein exercised control over a vehicle in violation of the automatic stay by refusing to return it upon request.

The City of Chicago has excepted itself from the operation of federal bankruptcy law by not objecting to its treatment in the plan before confirmation and refusing to return the debtor's vehicle unless its claim gets paid in full as a secured claim. In addition, the City is assuming that all of its claims are excepted from the imposition of the automatic stay by 11 U.S.C. § 362(b)(4) which states that the automatic stay does not cover the commencement or continuation of proceedings by governmental units to enforce its police and regulatory power including the

3

enforcement of a judgment other than a money judgment. Proceedings and fines imposed under ordinances that protect the health and welfare of a city's citizens are excepted from the automatic stay. *Cash Currency Exchange v. Shine*, 762 F.2d 542, 555 (7th Cir. 1985). However, by not seeking adequate protection from the court this issue can not be reviewed.

### Adequate Protection Issue

Debtors are required to give secured creditors some form of assurance that they will not suffer a decline in the value of their interest in a bankruptcy estate's property if they are stayed from enforcing their interest or the debtor is using, selling or borrowing against collateral. 11 U.S.C. § 361. If the creditor's interest declines in value while the debtor possesses it, the debtor or the bankruptcy estate must offset the decline. Adequate protection payments may be calculated by examining the value of the collateral during the month the bankruptcy petition was filed and the month immediately after. *In re Marks*, 394 B.R. 198, 202 (Bankr. N.D. Ill. 2008). Adequate protection may be periodic payments, replacement liens, or such other relief that results in the indubitable equivalent of a creditor's interest. The City of Chicago has not asked the court to order the debtor to provide adequate protection nor has it complained that its treatment in plan(s) proposed by the Debtor was improper for any reason under 11 U.S.C. § 1322(b)(2) regarding plan treatment of its secured claim, or under 11 U.S.C. § 1325(a)(5) regarding the Bankruptcy Code's lien retention provisions.

The City of Chicago is usurping the court's authority and responsibility to decide whether and how debtors have to provide adequate protection. In addition, the City of Chicago is ignoring its duty to return vehicles under the *Thompson* case.

4

### Possessory Liens Under Illinois Law

The City argues that it has a possessory lien which allows it to refuse to return vehicles unless its claim gets paid in reliance on *In re Avila*, 566 B.R. 558, 561 (Bankr. N.D. Ill. 2017). This court disagrees. According to the Illinois Appellate Court, Illinois recognizes common-law possessory liens in limited situations. Illinois law at 810 ILCS 5/9-333 states:

> (a) "Possessory lien." In this Section, possessory lien means an interest, other than a security interest or an agricultural lien:
> (1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;
> (2) which is created by statute or rule of law in favor of the person; and
> (3) whose effectiveness depends on the person's possession of the goods.

The City of Chicago does not have a possessory lien as it has not supplied the Debtor with goods or services and it does not cite to a statute or rule of law in its favor.

A District Court ruled that federal bankruptcy law does not preempt Municipal Code of Chicago (hereinafter "MCC") § 9-92-80. That ordinance states that "Any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." MCC § 9-92-80(f). That Court stated that "[t]he General Assembly recently amended MCC § 9-92-80 to provide that 'any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle.'" *See Baines v. City of Chicago*, 2018 WL 1558557 * 1 (N.D. Ill. March 22, 2018). The legislation mentioned therein was enacted by the Chicago City Council, not the Illinois General Assembly. The City of Chicago, which enjoys authority as a home rule body, can not expand on Illinois lien law at 810 ILCS 5/9-333.

The Illinois Constitution provides that home rule units, those with a population in excess

of 25,000:

> "Except as limited by this Section. . . may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license to tax; and to incur debt. Illinois Constitution 1970, Art. VII, § 6(a).

The power granted to home rule units need not be exclusive. Rather, home rule units may exercise power concurrently with the state.

Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive. Illinois Constitution of 1970, Article VII, § 6(i).

Municipalities have authority to govern as they deem proper, unless limited by the Illinois Constitution or the General Assembly. *City of Wheaton v. Loerop*, 399 Ill.App.3d 433, 434 (2010). Historic regulation by a state in an area of law is one factor to review in determining whether an area is of local dimension in determining whether a municipality's actions are a valid exercise of home rule authority. *See* Paul P. Biebel, Jr., HOME RULE IN ILLINOIS AFTER TWO YEARS: AN UNCERTAIN BEGINNING, 6 John Marshall Journal of Practice and Procedure 253, 283-85 (1973).

In *City of Oakbrook Terrace v. Suburban Bank and Trust Co.*, 364 Ill.App.3d 506, 514 (2006) the Appellate Court applied a three-part test to determine whether a municipality's actions were a valid exercise of its home rule authority. First, it decided whether the exercise of power by the municipality pertained to its government and affairs. Second, it decided whether the

legislature had specifically limited the local exercise of the power in issue or whether the legislature had specifically declared the State's exercise to be exclusive, totally preempting a home rule unit's exercise of its constitutional power. That Court also decided that if no specific action had been taken, it had to determine the proper relationship between the local ordinance and state law. That Court held an Oakbrook Terrace zoning ordinance invalid because it precluded a just compensation remedy available to defendants under the Eminent Domain Law, 735 ILCS 5/7-101.

The City of East St. Louis enacted an ordinance that prohibited non-wage garnishment of City funds on deposit at institutions within the City. The City contended that the ordinance did not conflict with Article XII of the Constitution and that it enjoyed sovereign immunity because the Constitution stated that except as the General Assembly provided by law, sovereign immunity was abolished. *McLorn v. City of E. St. Louis*, 105 Ill.App. 3d 148, 151 (1982). The City argued that the provision should be construed to allow other legislative bodies to legislate in the immunity area. *Id.* The Appellate Court ruled that the City could not provide itself with sovereign immunity via the ordinance in issue and that only the General Assembly could do so. *Id.* at 152. The Court also ruled that the ordinance did not relate to the City's governance and affairs within the meaning of Article VII, section 6 of the Illinois Constitution. *Id.* at 153.

The Illinois Supreme Court has found that certain local governments' legislative enactments did not pertain to their government and affairs and for that reason were not appropriate subjects for municipal legislation or that home rule units have to enact ordinances that are consistent with state law. *McLorn,* 148 at 153, *(citing County of Cook v. John Sexton Contractors Co.*, 75 Ill.2d 494, 27 Ill.Dec. 489, 389 N.E.2d 553 (1979); *People ex rel. Lignoul v.*

7

*City of Chicago*, 67 Ill.2d 480, 10 Ill.Dec. 614, 368 N.E.2d 100 (1977); *Ampersand, Inc. v. Finley*, 61 Ill.2d 537, 338 N.E.2d 15 (1975); and *City of Chicago v. Pollution Control Board*, 59 Ill.2d 484, 322 N.E.2d 11 (1974)).

In *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill.2d 103, 108 (2007) the Illinois Supreme Court made clear that all units of local government, home rule and non-home rule alike, have concurrent jurisdiction with the Illinois Environmental Protection Agency in zoning land for landfill sites.

The City of Chicago's ordinance, MCC 9-92-80(f), does not incorporate the General Assembly's standards, the first of which is that the creditor holding a possessory lien be owed a debt for services or materials furnished in the ordinary course of his or her business. 810 ILCS 5/9-333. The vehicle owners do not owe the City for goods or services as required by that statute. The ordinance simply declares that the City of Chicago has a possessory lien in certain impounded vehicles. Neither the City's legislative enactment nor its pleadings herein address the three statutory elements needed to support its position that it has a possessory lien in impounded vehicles.

In *People ex rel. Lignoul v. City of Chicago*, 67 Ill.2d 480 (1977) regarding regulation of the banking industry, the Supreme Court held that a City of Chicago Financial Services Ordinance was unconstitutional because only the General Assembly could make branch banking possible. That Court said that the powers of home rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are recognized as falling within the competence of state rather than local authorities. *Id.* at 485. The creation and imposition of liens is a matter of

statewide concern, it is not a matter pertaining to local units of government and their affairs. Statewide uniformity on these issues is paramount.

Another issue of statewide uniformity was addressed in *Ampersand, Inc. v. Finley*, 61 Ill.2d 537 (1975) where the Illinois Supreme Court ruled that a Cook County ordinance that directed the clerk of court to collect a $2.00 fee for the county law library at the time of filing of pleadings and appearances in civil cases was unconstitutional, finding that the county exceeded its home rule authority because the fee operated to charge admission to state courts, not to the county library. Illinois has a unified statewide court system which is not subject to regulation by local units of government.

*City of Quincy v. Daniels*, 246 Ill.App.3d 792 (1993) involved a Quincy municipal trespassing ordinance which created a criminal offense for conduct the state's criminal statute deemed to be noncriminal. The Court discussed the constitution's grant of home rule authority to certain units of government allowing them to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." *Id.* at 796 *(citing* the Illinois Constitution of 1970, Article VII, § 6(a)). The Court also noted that municipalities may exercise and perform concurrently with the State any power or function to the extent that the General Assembly does not specifically limit the concurrent exercise or declare the State's exercise to be exclusive. The Court quoted the committee on local government of the constitutional convention:

> If the state legislates but does not express exclusivity, home-rule units retain the power to act concurrently, subject to limitations provided by law. (This last phrase referring to statutory limitations is intended to cover the case where the legislature intends to permit

9

concurrent local legislation, but only with limits that are consistent with the state statutory scheme. Surely if the state is permitted to exclude local governments from areas where the state has acted, it also should be able to restrict the nature and extent of concurrent local activity.)" *Id.* at 796 (*quoting* 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1643-44).

The City's Ordinance is not consistent with Illinois law on possessory liens.

### Perfection of Liens Under 11 U.S.C. § 362(b)(3)

The City contends that it can maintain possession of impounded vehicles to perfect their liens as an exception to the automatic stay under 11 U.S.C. § 362(b)(3) which states that the automatic stay of section 362(a) does not apply to any act to perfect, maintain or continue the perfection of an interest in property. This provision does not authorize continued possession of impounded vehicles in contravention of the *Thompson* ruling. Perfection of liens encompasses recording notes and mortgages, not possession of collateral. If the City of Chicago had a lien, which it does not, it could perfect it by filing a notice of its interest with the Recorder of Deeds or the Secretary of State.

The City of Chicago overstepped its authority when it gave itself a possessory lien without reference to how state law defines possessory liens.

A recent Illinois Appellate Court opinion recognized a possessory lien on behalf of a shop keeper who worked on a vehicle. "Our supreme court has observed that Illinois recognizes the validity of the common-law possessory lien, known in certain instances as the 'artisan's possessory lien.'" *Ally Financial Inc. v. Pira,* 2017 IL App.(2d) 170213. Before 810 ILCS 5/9-333 was enacted, possessory liens were available to "two categories of persons: (1) artisans who impart added value to the property; and (2) common carriers who are bound by law to accept and carry the goods." *Id.* at 7 (citations omitted).

10

The *Baines* court noted that under basic preemption principles any attempt to alter the balance struck by Congress between the relative rights of debtors and creditors in bankruptcy would interfere with the nation's bankruptcy laws, frustrating their effectiveness. *Baines*, * 2. In *Butner v. U.S.*, 440 U.S. 48, 55 (1979) our Supreme Court noted that property rights are created by state law unless some federal interest required a different result. The City of Chicago enactment does not reflect Illinois law.

## Conclusion

The Motion to Modify Plan will be denied. The Debtor does not have to provide the City of Chicago 100% of its claim. The City of Chicago should have objected to its treatment in the Debtor's plan before it got confirmed.

The City of Chicago does not have a possessory lien.

The City of Chicago has failed to return the vehicle as required by the *Thompson* ruling since this case was filed on August 22, 2017. It is fined $50.00 a day for this wilful violation of the automatic stay.

This Amended Opinion reflects the court's findings of fact and conclusions of law. Separate amended orders will be entered on the Motion to Modify Plan and the Rule to Show Cause.

Dated: April 19, 2018                                      ENTERED:

*Jacqueline P. Cox*
_____
Jacqueline P. Cox
United States Bankruptcy Judge

11